The PEOPLE of the State of Colorado, Complainant,

v.

Donald Arthur BRENNER, Attorney–Respondent.

Nos. 87SA443, 88SA307.

Supreme Court of Colorado, En Banc.

Nov. 14, 1988.

Linda Donnelly, Disciplinary Prosecutor, George S. Meyer, Chief Deputy Disciplinary Prosecutor, Denver, for complainant.

E. Michael Canges, Denver, for attorney-respondent.

KIRSHBAUM, Justice.

The respondent, Donald Arthur Brenner, was admitted to the practice of law in Colorado on October 16, 1974, and has since that time been registered as an attorney with this court. Accordingly, pursuant to C.R.C.P. 241.1(b), he is subject to the jurisdiction of this court and its Grievance Committee respecting his conduct as an attorney.

The respondent has been charged with professional misconduct in two separate complaints, which cases have been consolidated by agreement of the parties. The first complaint, denominated case No. GC 86A–67 and containing two counts, alleges misconduct by the respondent in the course of representing a defendant in criminal proceedings in the Arapahoe County District Court and additional misconduct by the respondent in his communications with the Committee during its investigation of those allegations. The second complaint, denominated case No. GC 88A–44, alleges misconduct by the respondent in the course of representing a plaintiff in civil proceedings in the Denver District Court.

In case No. GC 86A–67, the hearing board conducted an evidentiary hearing and concluded that the respondent's representation of his client constituted professional misconduct. The hearing board also concluded that the allegations of misconduct in responding to the Committee's investigation contained in the second count were not established by clear and convincing evidence. A majority of the hearing board recommended imposition of a public censure as the sanction for the misconduct; one dissenting member recommended imposition of a thirty-day suspension. The hearing panel approved the findings and recommendation of the hearing board, one member dissenting, on October 3, 1987.

The Committee's findings and recommendations in case No. GC 86A–67 were forwarded to this court. However, prior to the imposition of any sanction, this court received the hearing panel's finding of professional misconduct in case No. GC 88A–44 and its unanimous recommendations that the two cases be consolidated and that the respondent receive a thirty-day suspension as a sanction. We accept the hearing panel's recommendations.

I

In case No. GC 86A–67, the following facts found by the hearing board are supported by the evidence adduced at hearing. On August 17, 1985, Matthew Teter was arrested for the felony offense of possession of cocaine. He contacted the respondent a few days later, orally agreed to pay the sum of $3,500 as a total fee and paid the respondent $1,000 as a retainer. No written fee agreement was prepared. On September 24, 1985, a charge of possession of cocaine was filed against Teter in the Arapahoe County District Court. A summons was issued directing him to appear in court on November 7, 1985; however, the summons was never served.

In late September and in October of 1985, the respondent informed Teter that no charges had been filed against him. In early November 1985, the respondent received several documents from the Arapahoe County District Attorney's Office in response to a request for discovery. The documents contained information indicating that formal charges had been filed against Teter. However, on November 15, 1986, the respondent wrote a letter to Teter stating, *inter alia,* that as of that date no charges had been filed against Teter. The respondent admits that he should have known at that time that charges had in fact been filed against his client.

On Sunday, May 11, 1986, Teter was arrested on a warrant for failing to appear pursuant to the summons and was taken to the county jail. He telephoned the respondent for assistance, and the respondent supplied the name of a bail bondsman. Teter's sister, then a law student, also attempted to effect her brother's release. She telephoned the respondent's office that day and left a message on his answering machine purporting to terminate his representation of Teter. Although Teter spent

one night in jail, he did not discharge the respondent at that time.

On May 13, 1986, Teter appeared with a public defender at a bond hearing, was granted a personal recognizance bond and was released from custody with instructions to return to court on May 27 for further proceedings. The respondent did not appear at the May 13 hearing and may not have been aware that it was to take place. Later that day the respondent did file an entry of appearance in the case on behalf of Teter and also filed several motions, including a motion for a preliminary hearing.

The respondent also sent a letter to Teter on May 13, 1986, which stated that the minimum fee in the case would be $5,000 plus costs, that $1,000 had been paid, and that a sum of $500 would be due each month until the $4,000 balance was paid in full. The respondent requested Teter to sign and return a copy of the letter if Teter agreed with its contents. Teter did not do so. The respondent has acknowledged that the description of the fee agreement set forth in the letter was erroneous.

On May 27, 1986, Teter and his sister met with the respondent at the Arapahoe County Courthouse just prior to the commencement of the proceedings previously scheduled for that day. Teter's sister stated her opinion that the respondent was unethical and should return the retainer fee to her brother. She also indicated that she was or would be filing a grievance against the respondent. The respondent promptly withdrew as Teter's attorney, but did not return the retainer fee.

On May 28, 1986, the respondent sent Teter a letter stating that the respondent had spent over ten hours of work on the case; had not been advised by Teter or his sister until the previous day that his services were terminated; and that although office time records indicated Teter owed additional money for services already rendered, the respondent would not impose any additional charges.

The May 28, 1986, letter also indicated that after Teter's initial arrest the respondent discussed Teter's status with an Arap-ahoe County police officer; that the officer stated that charges probably would not be filed against Teter because of a search and seizure problem; and that the respondent then indicated his belief that the officer's opinion was correct and asked the officer to contact the respondent if it appeared a case would be filed. The respondent has acknowledged that this portion of his May 28 letter was also inaccurate. Those statements were material to Teter's ability to evaluate the quality as well as the quantity of the services performed by the respondent, and should not have been communicated in the absence of a clear recollection of the discussions with the officer.

The respondent has returned the $1,000 retainer fee to Teter, although he did so only after the hearing board's initial findings and recommendation had been filed. The evidence establishes that under the circumstances the fee was excessive and that the respondent failed to deliver the retainer fee promptly to Teter on request.

The respondent's conduct in the course of representing Teter violated C.R.C.P. 241.6. His conduct also violated the following Disciplinary Rules of the Code of Professional Responsibility: DRI–102(A)(1) (violating a disciplinary rule); DR6–101(A)(3) (neglecting a legal matter); DR2–106(A) (charging a clearly excessive fee); and DR9–102(B)(4) (failing to deliver promptly to a client, upon request, funds the client is entitled to receive).

II

In case No. GC 88A–44, the respondent and the Deputy Disciplinary Prosecutor reached a Stipulation, Agreement and Conditional Admission of Misconduct. The following facts are established by the terms of the Stipulation.

On March 31, 1979, the home of Donald Burnworth was burglarized. Burnworth filed a claim with his insurance company for $35,000. The claim was denied. On March 4, 1985, Burnworth filed a civil action against the company. On July 1, 1985, the attorney representing Burnworth withdrew from the case. On July 9, 1985,

Burnworth retained the respondent to represent him in the case. On July 16, 1985, Burnworth forwarded $1,000 to the respondent, pursuant to the respondent's request.

On September 19, 1985, the trial court entered an order to the effect that the case would be dismissed without prejudice unless Burnworth either set the case for trial or filed a status report with the court within thirty days of that date. Having failed to enter his appearance in the case, the respondent was not sent a copy of the order. Burnworth, who did receive a copy of the order, assumed the respondent would take care of the matter and neither replied to the order nor communicated with the respondent about its contents. The trial court dismissed the case on October 30, 1985. A copy of the dismissal order was mailed to Burnworth.

The respondent first learned of these events in mid–November 1985, when he received a copy of the dismissal order from Burnworth. On November 20, the respondent filed an entry of appearance and a motion for reinstatement with the trial court. On November 19, the respondent mailed a copy of the motion for reinstatement and a proposed written fee agreement to Burnworth, together with a letter requesting Burnworth to sign and return the fee agreement promptly. The letter stated that the respondent had spent ten hours on the case. Burnworth did not execute the fee agreement.

The trial court denied the motion for reinstatement on December 3, 1985. The respondent received a copy of the order on December 15, 1985. On January 9, 1986, the respondent sent a letter to Burnworth reporting the trial court's ruling; indicating that an appeal would have to be filed within forty-five days of December 15, 1985; and requesting Burnworth to let the respondent know if an appeal should be filed. The letter also stated that the respondent had spent ten more hours on the case and would charge Burnworth for any additional services rendered.

In January 1988, Burnworth's wife telephoned the respondent and requested the return of the file and the $1,000 fee. The respondent agreed to return the file, but not the fee. After Burnworth filed the complaint initiating this grievance proceeding, the respondent returned the file to his client and tendered $1,000 to the Committee for transmittal to Burnworth.

The respondent admits that the foregoing conduct violated C.R.C.P. 241.6. He also admits that his conduct violated the following provisions of the Code of Professional Responsibility: DR1–102(A)(1) (violating a disciplinary rule); DR1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); DR2–106(A) (charging a clearly excessive fee); DR6–101(A)(3) (neglecting a legal matter); and DR9–102(B)(4) (failing to deliver promptly to a client, upon request, funds or property the client is entitled to receive).

### III

The Disciplinary Prosecutor recommends imposition of a thirty-day suspension for the respondent's misconduct in the two cases. The respondent recommends imposition of a public censure. Both parties agree to be bound by either sanction.

The respondent's professional misconduct in these two cases includes misrepresentations to clients concerning services actually performed on their cases; neglect of clients' interests, to their detriment; attempts to assess excessive legal fees; and efforts to retain improperly charged fees. The respondent's neglect of his professional responsibilities and his efforts to charge and retain a clearly excessive fee deviated substantially from the minimal level of competency required of all attorneys. The respondent repeatedly failed to adhere to the requirement that attorneys must at all times communicate accurate information to their clients and deal fairly and honestly with them. Failure to respect this basic tenet of the attorney-client relationship justifiably engenders public distrust of and disrespect for the entire legal profession.

In addition, prior to engaging in the activities that led to the proceedings, the respondent had received three letters of admonition from the Committee as the result of other conduct. The fact that an

attorney has previously been found to have engaged in professional misconduct may be considered an aggravating factor for purposes of imposing an appropriate sanction for further violations of the Code. *See Standards for Imposing Lawyer Sanctions* § 9.22(a) (1986).

The record reflects that in June 1985, the respondent experienced a tragedy in his personal life that resulted in a period of great stress for the respondent. The record also reflects that subsequent to January 1986, the respondent has actively engaged in numerous activities beneficial to his profession and to his community, and has dealt successfully with the stress he experienced in 1985. In view of the aggravating and mitigating factors disclosed here, we conclude that suspension from the practice of law for a period of thirty days represents an appropriate sanction for the respondent's admitted professional misconduct.

We hereby order that the respondent, Donald Arthur Brenner, be suspended from the practice of law for a period of thirty days. The respondent shall also pay the costs of these two proceedings in the total amount of $1,240.80, within thirty days of the date of this opinion, to the Supreme Court Grievance Committee, 600—17th Street, Suite 500–S, Denver, Colorado 80202.